

U.S. Department of Justice

United States Attorney
Eastern District of New York

One Pierrepont Plaza
Brooklyn, New York 11201

Mailing Address: 147 Pierrepont Street
Brooklyn, New York 11201

JAN
F.#2004R02013

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT. E.D.N.Y.

★ FEB 27 2006 ★

BROOKLYN OFFICE

Re-Sentence
3/30/06 @ 11:30 AM

January 31, 2006

The Honorable John Gleeson
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

s/John Gleeson

FEB 1 2006

CHAMBERS OF JUDGE GLEESON

Re: United States v. Carlos Capera
CR-04-744 (JG)

Dear Judge Gleeson:

The government respectfully submits this letter pursuant to your request for our response to a letter submitted by a relative of Carlos Capera in connection with the above-captioned matter. In that letter, Mr. Capera's relative, Javier Correra, asked whether the Mr. Capera's federal sentence is running concurrent to the state sentence subsequently imposed upon him, and whether the defendant will serve time in federal custody upon his release from the state. Based on information gathered from the state prosecutor, Brian Kaplan (Mr. Capera's federal lawyer), Andrew Freifelt (Mr. Capera's state lawyer) and the Bureau of Prisons, the government herein attempts to address these surprisingly thorny issues.

Mr. Capera was arrested by federal authorities on July 15, 2004. He was released on bail on July 16, 2004, then rearrested that same day by state authorities on a pending state indictment. The government dismissed its complaint against Mr. Capera on August 13, 2004, then indicted him on August 16, 2004. The government obtained a writ, pursuant to which Mr. Capera was taken into federal custody on or about August 24, 2004 for arraignment on the federal indictment. Mr. Capera was sentenced by this Court on May 20, 2005 to 18 months incarceration. Between August 24, 2004 and May 20, 2005, Mr. Capera remained in federal custody. At the sentencing proceeding, defense counsel raised the question as to whether Mr. Capera had received credit for the time he had served in custody to date. The government opined that Mr. Capera had been credited for the time he had

served in federal custody. The Court stated, presciently, "If not, and the Bureau of Prison doesn't see it the same way Mr. Nathanson sees it, you'll be back before me."

Following his federal sentencing, the state prosecutor obtained a writ and Mr. Capera was taken back into state custody on July 12, 2005. Mr. Capera pled guilty to state charges and was sentenced on August 9, 2005 to an indeterminate term of 3 years to life imprisonment. The state court specifically stated that the sentence was to run concurrent with Mr. Capera's federal sentence.

After this Court's request for a response to Mr. Correra's leter, the government gathered this information and communicated it to the Bureau of Prisons in order to determine the status of Mr. Capera's federal sentence. Based on this information, BOP provided the following analysis.

The sovereign which first arrests a defendant has primary jurisdiction over him, unless that sovereign relinquishes it to another sovereign by, for example, release on bail, dismissal of charges, parole release or expiration of sentence. See United States v. Smith, 812 F.Supp. 368, 371, n. 2 (E.D.N.Y. 1993). Federal primary jurisdiction over Mr. Capera was thus relinquished to the state on July 16, 2004. Furthermore, after Mr. Capera was writted to federal custody on August 30, 2004, the July 12, 2005 state "writ" was merely a return satisfying the federal writ. Primary jurisdiction remained with the state even while Mr. Capera was in federal custody.

A federal sentence does not commence until the Attorney General of the United States receives the defendant into his custody for service of that sentence. Smith, 812 F.Supp. at 370 (E.D.N.Y. 1993). When a federal court imposes a sentence on a defendant who is already in state custody (and it is ordered or recommended to run concurrent), the federal sentence may commence if and when the Attorney General or BOP agrees to designate the state facility for service of the federal sentence. Id. See also Barden v. Keohane, 921 F.2d 476, 481-82 (3d Cir. 1990). Designation authority has been delegated to the BOP. See 18 U.S.C. § 3621 (vesting designation authority in BOP); 28 C.F.R. § 0.96 (delegating authority of Attorney General under repealed 18 U.S.C. § 4082 to BOP). See also United States v. Pineyro, 112 F.3d 43, 45 (2d Cir. 1997) (after a defendant is sentenced, it falls to BOP, not the district judge, to determine when a sentence is deemed to "commence," and whether the defendant should receive credit for time spent in custody before the sentence "commenced.") The earliest date a federal sentence can

commence is on the date on which it was imposed, not on the date of commencement of some prior sentence or some other date. See Shelvy v. Whitfield, 718 F.2d 441, 444 (D.C.Cir. 1983); United States v. Flores, 616 F.2d 840, 841 (5th Cir. 1980).

Based on the facts described above and their legal analysis, BOP opined that the federal sentence could have been deemed to commence on May 20, 2005 - though no earlier - if this Court had stated that Mr. Capera's sentence was to run concurrent to any state sentence. As the Court was silent on this issue, currently the federal sentence will not commence until the completion of the state sentence. See 18 U.S.C. § 3584. If the Court decides that the sentences should run concurrent - a determination that the government will not oppose - BOP may deem that Mr. Capera's federal sentence began on May 20, 2005, the date this Court imposed it.

BOP can not, however, give the defendant credit for the time served prior to the date this Court imposed sentence, so long as Mr. Capera is being given credit against his state time for that period. See 18 U.S.C. § 3585 (stating that credit for time served prior to the imposition of sentence will be awarded so long as the time has not been credited against another sentence).

Assuming this Court amends Mr. Capera's sentence to make it concurrent with the state sentence - and thus Mr. Capera receives credit for custody commencing on May 20, 2005 - it appears that Mr. Capera will have effectively served approximately 9 months of his 18 month federal sentence as of February 20, 2006. As of that same date, it appears that Mr. Capera will have served approximately 19 months of his three-to-life state sentence. While this suggests that Mr. Capera will finish his federal sentence before his state sentence, the government has not been able to ascertain that fact with any reasonable degree of certainty as it depends largely on the intricacies of the state corrections system.

Very truly yours,

ROSLYNN R. MAUSKOPF
United States Attorney

By: _____
John A. Nathanson
Assistant United States Attorney
(718) 254-7492

cc: Brian Kaplan, Esq.